ERICA J. VAN LOON (State Bar No. 227712)
erica.vanloon@lathropgpm.com
ANDREW H. WINETROUB (State Bar No. 291847)
awinetroub@nixonpeabody.com
NIXON PEABODY LLP
300 South Grand Avenue, Suite 4100
Los Angeles, California 90071-3151
Tel: (213) 629-6000
Fax: (213) 629-6001

GARY R. SORDEN (admitted *pro hac vice*)
gsorden@coleschotz.com
VISHAL PATEL (admitted *pro hac vice*)
vpatel@coleschotz.com
JAMES R. PERKINS (admitted *pro hac vice*)
jperkins@coleshotz.com
COLE SCHOTZ P.C.
901 Main Street, Suite 4120
Dallas, Texas 75202
Tel: (469) 557-9390
Fax: (469) 533-1587

Attorneys for Plaintiff,
**Correlated Magnetics Research, LLC**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| CORRELATED MAGNETICS RESEARCH, LLC<br><br>Plaintiff,<br><br>v.<br><br>LOGITECH INC.,<br><br>Defendant. | Case No.: 4:21-cv-02554-JST<br><br>**PLAINTIFF CORRELATED MAGNETICS RESEARCH, LLC'S OPENING CLAIM CONSTRUCTION BRIEF**<br><br>Judge:     Judge Jon S. Tigar<br>Hearing:   April 18, 2022<br>Time:      2:00 pm |

**TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................................. 1
II.    OVERVIEW OF PATENTS IN SUIT ............................................................................. 1
III.   LEGAL STANDARD ...................................................................................................... 3
IV.    DISPUTED TERMS ........................................................................................................ 5
V.     CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Andrew Corp. v. Gabriel Elecs., Inc.*,
  847 F.2d 819 (Fed. Cir. 1988) ..................................................................................................14

*CCS Fitness, Inc. v. Brunswick Corp.*,
  288 F.3d 1359 (Fed. Cir. 2002) ...................................................................................................3

*Contour IP Holding, LLC v. GoPro, Inc.*,
  No. 17-CV-04738-WHO, 2018 WL 3428606 (N.D. Cal. July 16, 2018) ..................................4

*Deere & Co. v. Bush Hog, LLC*,
  703 F.3d 1349 (Fed. Cir. 2012) .................................................................................................14

*Epos Techs. Ltd. v. Pegasus Techs. Ltd.*,
  766 F.3d 1338 (Fed. Cir. 2014) .................................................................................................10

*Halliburton Energy Servs., Inc. v. M-I LLC*,
  514 F.3d 1244 (Fed. Cir. 2008) ........................................................................................ passim

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
  755 F.3d 1367 (Fed. Cir. 2014) .................................................................................................10

*Keithley v. Homestore.com, Inc.*,
  No. C03-04447 MJJ, 2007 WL 2701337 (N.D. Cal. Sept. 12, 2007) ........................................4

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995) ......................................................................................................4

*In re Marosi*,
  710 F.2d 799 (Fed. Cir. 1983) ....................................................................................................4

*McGinley v. Franklin Sports, Inc.*,
  262 F.3d 1339 (Fed. Cir. 2001) .................................................................................................13

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  572 U.S. 898 (2014) ...............................................................................................................4, 12

*Nitride Semiconductors Co. v. RayVio Corp.*,
  No. 5:17-CV-02952-EJD, 2018 WL 2183270 (N.D. Cal. May 11, 2018) ................... 4, 6, 9, 13

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ..............................................................................................3, 10

*Ruckus Wireless, Inc. v. Netgear, Inc.*,
   No. C 08-2310 PJH, 2013 WL 6627737 (N.D. Cal. Dec. 16, 2013) ...................................... 14

*SynQor, Inc. v. Artesyn Techs., Inc.*,
   709 F.3d 1365 (Fed. Cir. 2013) ............................................................................................. 11

*Toshiba Corp. v. Lexar Media, Inc.*,
   No. C-02-5273 MJJ, 2005 WL 6217120 (N.D. Cal. Jan. 24, 2005) ....................................... 11

*Williamson v. Google Inc.*,
   No. 15-CV-00966-BLF, 2017 WL 3232582 (N.D. Cal. July 27, 2017) .......................... *passim*

iii

Plaintiff Correlated Magnetics Research, LLC ("CMR") respectfully submits its Opening Claim Construction Brief.

## I. INTRODUCTION

The disputed claim phrases should be afforded their plain and ordinary meaning because the language of the patents-in-suit is readily understood by a person of ordinary skill in the art in view of the intrinsic record. Further, Defendant Logitech Inc.'s ("Defendant" or "Logitech") indefiniteness arguments are contrary to law and without support. Where it does propose a construction, Logitech improperly imports preferred embodiments into the claim. For these and other reasons provided herein, this Court should reject Logitech's arguments and give the disputed claim terms their plain and ordinary meaning.

## II. OVERVIEW OF PATENTS IN SUIT

There are three CMR patents at issue in this action: (1) U.S. Patent No. 8,314,672 (the "'672 Patent"), titled "Magnetic Attachment System Having Composite Magnet Structures" (Dkt. 1, Complaint, at Exhibit A, p. 32-82, hereinafter "Ex. A"), (2) U.S. Patent No. 8,354,909, (the "'909 Patent"), titled "Magnetic Attachment System Having a Non-Magnetic Region" (Dkt. 1, Complaint, at Exhibit B, p. 83-135, hereinafter "Ex. B"), and (3) U.S. Patent No. 10,173,292 (the "'292 Patent"), titled "Method for Assembling a Magnetic Attachment Mechanism" (Dkt. 1, Complaint, at Exhibit C, p. 136-187, hereinafter "Ex. C"). The specifications for the patents-in-suit have similar disclosures and stem from the same line of patents. The '672 Patent and '909 Patent claim priority to U.S. Provisional Pat. App. No. 61/123,019 filed on April 4, 2008. The '292 Patent claims priority to U.S. Pat. App. No. 12/358,423 filed on January 23, 2009.

The patents-in-suit are directed to magnetic attachment systems and methods for assembling magnetic attachment mechanisms. *See, e.g.*, Ex. A, '672 Pat. at claim 1; Ex. B, '909 Pat. at claim 17; Ex. C, '292 Pat. at claim 12. Among other things, the patents-in-suit disclose novel magnetic structures having polarity patterns based on various codes. *See, e.g.*, Ex. A, '672 Pat. at Col. 2:21-23. The polarity patterns allow for a high attractive force between two magnets when the magnets are

1

aligned and a low attractive force, or even a repel force, when the magnets are misaligned. *Id.* at Col. 2:28-33. These magnetic structures may be used in attachment mechanisms between two objects. *Id.* at Col. 2:15-27. The claimed attachment systems allow for stability and rigidity but also for quick and easy removal. *Id.* at Col. 2:7-11. Specifically, claim 1 of the '672 Patent requires:

> A magnetic attachment system comprising:
> a base; and a plurality of magnetic structures associated with said base, each magnetic structure of said plurality of magnetic structures comprising a respective plurality of magnetic field sources comprising one or more contiguous pieces of permanent magnet material, said plurality of magnetic structures comprising a plurality of polarity regions, at least one magnetic structure of said plurality of magnetic structures being based on a respective pat tern having a respective autocorrelation function characterized by a single peak autocorrelation position and a plurality of off-peak autocorrelation positions, wherein a greatest off-peak autocorrelation magnitude of said plurality of off-peak autocorrelation positions is less than half of the peak autocorrelation magnitude at said peak autocorrelation position.

*Id.* at Col. 40:4-20.

The asserted claims of the '909 Patent and '292 Patent are directed to methods for assembling magnetic attachment mechanisms. See '909 Pat. at claim 17; '292 Pat. at claim 12. Claim 17 of the '909 Patent requires:

> A method for assembling a magnetic attachment mechanism, said method comprising:
>
> affixing to a substantially linear holding structure a plurality of pieces of neodymium iron boron magnetic material, said plurality of pieces of neodymium iron boron magnetic material comprising a first plurality of magnetic field sources, each magnetic field source of said first plurality of magnetic field sources having a polarity, said first plurality of magnetic field sources configured Such that said magnetic attachment mechanism is capable of generating a peak attract force, a plurality of off-peak repel forces, and a plurality of off-peak attract forces when said magnetic attachment mechanism is exposed to a second plurality of magnetic field sources moved laterally along the length of said linear holding structure, said first plurality of magnetic field sources being complementary to said second plurality of magnetic field sources, each off-peak attract force of said plurality of off-peak attract forces being less than one half the strength of said peak attract force, and each off peak repel force of said plurality of off-peak repel forces being less than one-half of said peak attract force; and
>
> positioning said linear holding structure and said plurality of pieces of neodymium iron boron magnets comprising said first plurality of magnetic field sources in a compartment, wherein the compartment

> substantially restricts movement of said linear holding structure in at least two dimensions.

Ex. B, '909 Pat. at Col. 42:41 – Col. 43:2. And claim 12 of the '292 Patent requires:

> A method for assembling a magnetic attachment mechanism, said method comprising: assembling one or more magnetic structures, each magnetic structure comprising one or more pieces of permanent magnet material having three or more magnetic regions, each magnetic structure having three or more magnetic regions creating a polarity pattern having a respective autocorrelation function characterized by a plurality of alignment positions of each magnetic structure, said plurality of alignment positions comprising a peak force alignment position and a plurality of off-peak force alignment positions, wherein a peak force is produced at the peak force alignment position, and wherein a plurality of off-peak forces are produced at said plurality of off-peak alignment positions, and wherein one or more of said plurality of off-peak forces are the result of cancellation of an attract force by a repel force.

Ex. C, '292 Pat. at Col. 41:8-23.

## III.   LEGAL STANDARD

### A.   Legal Principles of Claim Construction

It is well established that "words of a claim 'are generally given their ordinary and customary meaning,'" which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). There is a "heavy presumption that a claim term carries its ordinary and customary meaning." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (internal quotation marks and citation omitted).

In construing claim terms, the Court considers three sources: (1) the claims; (2) the specification; and (3) the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). After analyzing the patent's claims, the Court should look to the claim's specification "[b]ecause the specification must contain a description of the invention that is clear and complete enough to enable those of ordinary skill in the art to make and use it, the specification is 'always highly relevant' to the Court's claim construction analysis."

3

*Keithley v. Homestore.com, Inc.*, No. C03-04447 MJJ, 2007 WL 2701337, at *2 (N.D. Cal. Sept. 12, 2007) (citing *Vitronics*, 90 F.3d at 1582. Finally, the Court looks to the patent's prosecution history. *Id.* (citing *Phillips*, 415 F.3d at 1317) ("'The prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower then it would otherwise be.'").

### B. Indefiniteness

In determining whether a patent is invalid for indefiniteness, the Court must consider whether there is reasonable certainty as to the scope of the invention. *First*, where a patent, read in light of the specification and prosecution history, informs those skilled in the art with reasonable certainty as to the scope of the invention, the patent is not invalid for indefiniteness. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901, 910 (2014) ("[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention" and that "[t]he definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable."); *Contour IP Holding, LLC v. GoPro, Inc.*, No. 17-CV-04738-WHO, 2018 WL 3428606, at *4 (N.D. Cal. July 16, 2018) (explaining that the "claims and specifications" must "inform a POSITA about the scope of the invention"); *In re Marosi*, 710 F.2d 799, 803 (Fed. Cir. 1983) (finding claims not indefinite when the specification provided "a general guideline and examples sufficient to enable a person of ordinary skill in the art to determine whether" the claim limitation was satisfied).

*Second*, simply because a term is susceptible to a broad interpretation, a claim term may apply to a broad range of infringing devices, or there are multiple ways to meet a claim limitation, does not render a claim indefinite. *Nitride Semiconductors Co. v. RayVio Corp.*, No. 5:17-CV-02952-EJD, 2018 WL 2183270, at *15 (N.D. Cal. May 11, 2018) (noting that a patent claim may include language broad enough to encompass multiple infringing implementations without

4

preventing a person of ordinary skill in the art from understanding the scope of the claims); *Williamson v. Google Inc.*, No. 15-CV-00966-BLF, 2017 WL 3232582, at *9 (N.D. Cal. July 27, 2017) ("Accordingly, that there are numerous ways to meet this claim limitation, as argued by Google, does not alone make claim 7 indefinite.").

*Lastly*, to prove indefiniteness, an accused infringer must show "by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008).

## IV.   DISPUTED TERMS

### A.   "a plurality of magnetic structures associated with said base, each magnetic structure of said plurality of magnetic structures comprising a respective plurality of magnetic field sources comprising one or more contiguous pieces of permanent magnet material" ('672 patent, claim 1)

| Plaintiff's Construction | Defendant's Construction |
| --- | --- |
| Plain and ordinary meaning | This claim limitation is indefinite. |

This disputed phrase should be given its plain and ordinary meaning. *Williamson*, 2017 WL 3232582, at *7 (holding that the term "[l]ocation signal" "is neither a technical term nor word of art but instead has a plain and ordinary meaning in light of the specification and in context of the claims."). The claim language makes clear that what is required by this phrase is simply: (1) a plurality of magnetic structures associated with said base; (2) each magnetic structure comprising a respective plurality of magnetic field sources; and (3) the respective plurality of magnetic field sources, in turn, comprising one or more contiguous pieces of permanent magnet material. The words of the claim are clear, and the phrase does not require construction.

The specification confirms that this phrase should be given its plain and ordinary meaning. For example, the '672 Patent describes that "[i]n several embodiments of the invention, the magnet structure may comprise magnetic components arranged according to a variable code," and that "[t]he

5

magnetic field components may be individual magnets or different magnetized portions in a single contiguous piece of magnet material. Ex. A, '672 Pat. at Col. 3:40-48. As another example, Figure 2D "illustrates a linear magnet structure of seven magnets." *Id.* at Col. 7:50-51. The specification further explains that "[e]ach of the seven magnets of FIG. 2D and other illustrations of this disclosure may also be referred to as component magnets of the magnet structure, magnetic field sources, magnetic field emission sources or field emission sources." *Id.* at Col. 7:64-67. Figure 2D is reproduced below with annotations that illustrate the parts of a magnetic structure.



And Figure 2E provides an exemplary variably coded magnet structure. *See, e.g.*, *id.* at FIG. 2E.

As set forth above, the language of this phrase is readily understood, and the specification supports that the phrase should be given its plain and ordinary meaning.

Logitech's indefiniteness argument must fail. Logitech argues that this claim limitation is indefinite because the claim language applies to and covers multiple combinations or permutations of how a device could be created. However, simply because a term is susceptible to a broad interpretation or a claim term may apply to a broad range of infringing devices does not render a claim indefinite. *See, e.g.*, *Nitride*, 2018 WL 2183270, at *15 (N.D. Cal. May 11, 2018) ("Although, based on this description, it seems possible that the 'lattice mismatch' could occur between any of the three layers, this, ultimately, would not prevent a person of ordinary skill in the art from

6

understanding the scope of the claims with reasonable certainty. This may sweep in a broad range of potentially infringing devices, but the boundary is nonetheless clear."); *Williamson*, 2017 WL 3232582, at *9 (N.D. Cal. July 27, 2017) ("Accordingly, that there are numerous ways to meet this claim limitation, as argued by Google, does not alone make claim 7 indefinite.").

In *Williamson*, for example, the plaintiff alleged that Google's AdSense and other products infringed two of its patents, the '698 patent, directed at using first banner request that cannot be blocked from reaching a server for accurately counting displays of banners on network terminals, and '045 patent, directed at information storage and delivery over a computer network. *Williamson*, 2017 WL 3232582, at *1. The parties disputed the meaning of the term "best suited." *Id.* at *8-9. The plaintiff argued that no construction was necessary, but Google contended that the term was indefinite "because there remains a limitless list of qualities one could consider to determine which server is 'best suited.'" *Id.* at *9. The Court held that just because "there are numerous ways to meet this claim limitation, as argued by Google, does not alone make claim 7 indefinite . . . the claim language viewed in light of the specification adequately informs a person of ordinary skill in the art the scope of the claim with reasonable certainty." *Id.* at *9-10. Similarly, here, just because the claim language can apply to and cover multiple configurations does not render the term indefinite.

Moreover, Logitech has not met its burden of showing indefiniteness by the clear and convincing standard:

> [A]side from conclusory assertions that one of ordinary skill in the art cannot discern the scope of the claim without specific selection criteria . . . Google has not presented clear and convincing evidence showing why these examples would be inadequate or why specific selection criteria would be necessary. For example, Google has not presented any expert opinions on whether one of ordinary skill in the art would be able to determine the scope or meaning of claim 7. Without evidence on this point, Google cannot meet its burden of showing indefiniteness by the clear and convincing standard.

*Id.* at *10.

Logitech failed to present *any* evidence as to why the first term is not readily understood by a person of ordinary skill in the art, in light of the claim's specification, and has not presented any

7

expert opinion regarding whether one of ordinary skill in the art "would be able to determine the scope or meaning of claim." *Id.*; *see also Halliburton*, 514 F.3d at 1249. Accordingly, Logitech's argument regarding indefiniteness should be rejected.

> **B.** **"each magnetic structure comprising one or more pieces of permanent magnet material having three or more magnetic regions, each magnetic structure having three or more magnetic regions creating a polarity pattern having a respective autocorrelation function characterized by a plurality of alignment positions of each magnetic structure" ('292 Patent, Claim 12)**

| Plaintiff's Construction | Defendant's Construction |
| --- | --- |
| Plain and ordinary meaning | This claim limitation is indefinite. |

The parties' dispute regarding this claim phrase is the same as that argued for the previous claim phrase, above. Just like the language from the '672 Patent, the language of this disputed phrase is readily understood and should be given its plain and ordinary meaning.

The '292 Patent describes that "[a] coded magnet structure is typically a set of magnets positioned along an interface boundary with the north-south orientation of each individual magnet field at the interface boundary selected to be positive (north-south) or negative (south-north) according to a predefined pattern, alternatively referred to as a code." *See* Ex. C, '292 Pat. at Col. 6:8-13. Additionally, the '292 Patent describes the same linear magnet structure of seven magnets described in the '672 Patent. *Id.* at Col. 7:16-49. And Logitech admits that "magnetic region" as used in this claim phrase should be interpreted in the same way as "magnetic field source" used in the '672 Patent. *See* Dkt. 67, Joint Claim Construction and Prehearing Statement, and Dkt. 67-1 at p. 4. For at least these reasons, and because Logitech provides no alternative construction, this phrase should be given its plain meaning.

Similar to the first disputed term, Logitech's indefiniteness argument fails. Logitech again contends that this claim limitation is indefinite because the claim language could apply to and cover multiple combinations or permutations of how a device could be created. But simply because a term is susceptible to a broad interpretation or a claim term may apply to a broad range of infringing

8

devices does not render a claim indefinite. *See, e.g.*, *Nitride*, 2018 WL 2183270, at *15; *Williamson*, 2017 WL 3232582, at *9. Moreover, Logitech failed to meet its burden of proving indefiniteness by the clear and convincing standard. *Williamson*, 2017 WL 3232582, at *10. Logitech did not present *any* evidence as to why the first term is not readily understood by a person of ordinary skill in the art, in light of the claim's specification, and has not presented any expert opinion regarding whether one of ordinary skill in the art "would be able to determine the scope or meaning of claim." *Id.*; *see also Halliburton*, 514 F.3d at 1249.

> **C.** **"each magnetic structure comprising one or more pieces of permanent magnet material, wherein each magnetic structure having three or more magnetic regions, each of said magnetic regions comprising a polarity, said one or more magnetic structures creating a polarity pattern having a respective autocorrelation function characterized by a plurality of alignment positions of each magnetic structure" ('292 Patent, claim 20)**

| Plaintiff's Construction | Defendant's Construction |
| --- | --- |
| Plain and ordinary meaning | This claim limitation is indefinite. |

This phrase should be given its plain and ordinary meaning. The parties' dispute regarding this phrase is the same as set forth in Sections A and B above. Like the previous phrases, the language of this phrase from claim 20 of the '292 Patent is readily understood by a person of skill in the art. Indeed, the '292 Patent provides a variety of examples of such a magnetic structure. *See, e.g.*, Ex. C, '292 Pat. at Col. 6:8-13; Col. Col. 7:16-49. Because the language is readily understood by a person of skill in art, it requires no further construction.

Similar to the first and second disputed terms, Logitech argues that the disputed term is indefinite because the claim language applies to and covers multiple combinations or permutations of how a device could be created. Logitech is wrong. *See, e.g.*, *Nitride*, 2018 WL 2183270, at *15; *Williamson*, 2017 WL 3232582, at *9. Moreover, Logitech failed to meet its burden of proving indefiniteness by the clear and convincing standard. *Williamson*, 2017 WL 3232582, at *10. Logitech did not present *any* evidence as to why the first term is not readily understood by a person of ordinary skill in the art, in light of the claim's specification, and has not presented any expert

9

opinion regarding whether one of ordinary skill in the art "would be able to determine the scope or meaning of claim." *Id.*; *see also Halliburton*, 514 F.3d at 1249.

### D. "at least two magnetic field sources of at least one of said respective plurality of magnetic field sources are contained in a single contiguous piece of magnetic material" ('672 Patent, Claim 3)

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning | This claim limitation fails to satisfy the written description and enablement requirements.<br><br>In the alternative: "a set of two or more magnets rigidly bonded together to act mechanically as a single piece or two or more magnetic field sources having a spatial and/or polarity pattern that are formed within a contiguous magnet material." |

This term should be given its plain and ordinary meaning. The term is clear on its face, can be readily understood by the lay reader, and needs no further definition or construction by the Court. *See, e.g.*, *Williamson*, 2017 WL 3232582, at *7 (holding that the term "'[l]ocation signal'" "is neither a technical term nor word of art but instead has a plain and ordinary meaning in light of the specification and in context of the claims.").

Logitech's arguments fail for several reasons. *First*, Logitech argues that "[t]his claim limitation fails to satisfy the written description and enablement requirements." *See* Dkt. 67-1 at p. 5. However, Logitech's argument is improper. Logitech's assertion that "[t]his claim limitation fails to satisfy the written description and enablement requirements" is not a claim construction issue. *Id.*; *see, e.g.*, *Phillips*, 415 F.3d at 1327 ("[W]e have certainly not endorsed a regime in which validity analysis is a regular component of claim construction"). Moreover, Logitech proposes an alternative construction, so Defendant is perfectly aware that the specification informs a person of ordinary skill in the art what this term means. By proposing a construction, Defendant admits the term is not indefinite.

*Second*, Logitech attempts to impermissibly narrow the scope of this term by importing limitations from different embodiments into its proposed construction. *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014); *Epos Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338, 1343 (Fed. Cir. 2014) (vacating a district court construction that improperly imported a term from a preferred embodiment into its construction); *see, e.g.*, *Toshiba Corp. v. Lexar Media, Inc.*, No. C-02-5273 MJJ, 2005 WL 6217120, at *16 (N.D. Cal. Jan. 24, 2005) ("The additional verbiage is unnecessary and would improperly import a limitation from the preferred embodiment into the construction of the claim term."). Logitech attempts to add various limitations to the claim language, including "a set of two or more magnets rigidly bonded together to act mechanically as a single piece" and "having a spatial and/or polarity pattern." Neither of these limitations is warranted. While the '672 Patent discloses that "[a] magnet structure typically refers to a set of magnets rigidly bonded together as if glued or potted to act mechanically as a single piece," this disclosure relates to a "magnet structure" not "magnetic field sources" that are the subject of this claim language. *See* Ex. A, '672 Pat. at Col. 7:53-63. The specification distinguishes between the two. *Id.* at Col. 7:64-67. Even if the disclosure from the specification were directed to "magnetic field sources"—it is not—Logitech's proposed construction still fails. While the specification states that a magnet structure *typically* refers to a set of magnets rigidly bonded together, it also discloses "flexible bonding arrangements" and "holding mechanisms" for maintaining the orientation of the magnets of the magnet structure. *Id.* at Col. 7:53-63. A proposed construction that excludes an embodiment is "rarely, if ever, correct." *See SynQor, Inc. v. Artesyn Techs., Inc.*, 709 F.3d 1365, 1378-79 (Fed. Cir. 2013).

Further, Logitech's inclusion of "spatial and/or polarity pattern" also attempts to include limitations of a preferred embodiment. The specification expressly states that "coded magnet structure *may* include contiguous magnet material with a spatial and/or polarity pattern of magnetization along the material." Ex. A, '672 Pat. at Col. 6:61-63. Nothing in this language requires the claims to be so limited.

11

### E.    "composite autocorrelation function" ('672 Patent, Claim 7)

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning | This claim limitation is indefinite. |

The term "composite autocorrelation function" should be given its plain and ordinary meaning. Logitech does not appear to dispute that "autocorrelation function" is readily understood by a person of skill in the art. Indeed, "autocorrelation function" is used in claim 1 of the '672 Patent, and Logitech did not seek to construe the term in that claim. Rather, Logitech appears to contend that the phrase "composite autocorrelation function" is indefinite because it is not expressly used in the specification. A term is not indefinite simply because it does not appear in the specification, the test is whether a person of ordinary skill in the art is informed as to the scope of the claim with reasonable certainty. *Nautilus*, 572 U.S. at 901.

The word "composite" is not a technical term or a word of art and should be given its plain and ordinary meaning. *See Williamson*, 2017 WL 3232582 at *7. The specification makes clear that the word "composite" is being used in its normal sense to refer to something being made up of various parts or components. For example, the title of the patent is "Magnetic Attachment System Having Composite Magnet Structures." Ex. A, '672 Pat. at Title. The claims indicate that the "composite autocorrelation function" of claim 7 simply refers to the magnetic structures of claim 2, each of which has its own autocorrelation function, and which in combination have the claimed composite autocorrelation function. *Compare id.* at Col. 40:42-43 ("said plurality of magnetic structures have a composite autocorrelation function…") *with* Col. 40:12-14 ("at least one magnetic structure of said plurality of magnetic structures being based on a respective pattern having a respective autocorrelation function…"). Such a structure is depicted in Fig. 20, which depicts a panel and a base including two separate magnetic structures based on seven individual magnets arranged in a "Barker-7" code. *Id.* at Col. 32:29-37. As the specification describes:

> [W]hen the magnet structures of the panel frame are aligned with the magnet structures of the window frame, the magnet structures have an attracting force of 14 magnet pairs. In accordance with the Barker 7 code, a shift of one magnet width right or left, or up or down, results in

12

> essentially zero magnetic attraction. One additional shift results in a repelling force of one magnet pair. Additional shifts are either zero or repelling. Thus, only the alignment position has a strong attraction force . . . . Thus, the panel is easily installed and held securely in a precisely located unique position corresponding to a single code component of the multiple code component magnet structure.

*Id.* at Col. 32:29-37, Col. 33:4-7.

Based upon the specification, the term "composite autocorrelation function" is readily understood and should be given its plain and ordinary meaning.

This Court should reject Logitech's indefiniteness argument. Logitech fails to present expert testimony as to why the term "composite autocorrelation function" is not readily understood. Logitech did not present any evidence that a person of ordinary skill in the art is not informed by the specification. *Halliburton*, 514 F.3d at 1249 (requiring "accused infringer [to] show[] by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification" to prove indefiniteness). The only evidence Logitech provides is attorney argument, which is insufficient to meet its burden of clear and convincing evidence. *See, e.g.*, *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1362 (Fed. Cir. 2001) ("Mere attorney argument is no substitute for evidence of record.").

### F. "compartment substantially restricts movement of said linear holding structure in at least two dimensions" ('909 Patent, Claim 17)

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning | This claim limitation is indefinite and fails to satisfy the written description and enablement requirements. |

The term "compartment substantially restricts movement of said linear holding structure in at least two dimensions" should be given its plain and ordinary meaning. The term is clear on its face, can be readily understood by a person of ordinary skill in the art, and even the lay reader. It needs no further definition or construction by the Court. *See, e.g.*, *Williamson*, 2017 WL 3232582, at *7.

13

Logitech contends the words "compartment" and "linear holding structure" are ambiguous and therefore render claim 17 of the '909 Patent indefinite. Dkt. 67-1 at p. 7. It also argues that use of the term "substantially" is subjective and also renders claim 17 indefinite. *Id.* Logitech is wrong.

There is nothing ambiguous about the words "compartment" and "linear holding structure." These words are readily understood even by a lay person, and the '909 Patent does not use them differently. The specification describes that magnetic structures may be mechanically constrained to motion in just a single degree of freedom. Ex. B, '909 Pat. at Col. 18:4-21. In addition to "holding mechanism[s]" for maintaining the orientation of the magnets of a magnetic structure, the specification also discloses that "[m]ovement may be restricted by such mechanical features as alignment pins, channels, stops, *container walls* or other mechanical limits." *See e.g., id.* at Col. 7:60-63; Col. 20:60-62 (emphasis added). The '909 Patent also discloses housings and other mechanical restrains to limit the movement of magnet structures. *See id.* at Col. 23:33-38; Col. 24:26-32.

Additionally, "[t]his court has repeatedly confirmed that relative terms such as 'substantially' do not render patent claims so unclear as to prevent a person of skill in the art from ascertaining the scope of the claim." *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1359 (Fed. Cir. 2012); *Ruckus Wireless, Inc. v. Netgear, Inc.*, No. C 08-2310 PJH, 2013 WL 6627737, at *4 (N.D. Cal. Dec. 16, 2013) ("Thus, the court finds that the word 'substantially' is 'warranted by the nature of the invention,' and declines to find that the term 'substantially omnidirectional' is indefinite.").

In *Andrew Corp.*, the district court held certain patent claims invalid, finding that that terms such as "approach each other", "close to", "substantially equal", and "closely approximate" were invalid for indefiniteness. *Andrew Corp. v. Gabriel Elecs., Inc.*, 847 F.2d 819, 821 (Fed. Cir. 1988). But the Federal Circuit reversed, holding that "[t]he criticized words are ubiquitous in patent claims. Such usages, when serving reasonably to describe the claimed subject matter to those of skill in the field of the invention, and to distinguish the claimed subject matter from the prior art, have been accepted in patent examination and upheld by the courts." *Id.* Here, the specification describes the need to maintain the orientation of the individual magnets of the magnet structure and provides

14

various examples of how movement is substantially restricted. *See, e.g.*, Ex. B, '909 Pat. at Col. 7:53-63; Col. 18:4-21; Col. 20:60-62; Col. 23:33-38; Col. 24:26-32. Based on the disclosure of the '909 Patent's specification, a person of skill would be informed as to the scope of claim 17 with reasonable certainty, and Logitech's contentions to the contrary should be rejected.

## V.   CONCLUSION

For the foregoing reasons, CMR requests that the Court reject Logitech's proposed constructions and find that the disputed claim limitations should be given their plain and ordinary meaning.

| | | |
|---|---|---|
| Dated: | March 4, 2022 | **NIXON PEABODY LLP** |
| | | /s/ *Erica J. Van Loon* |
| | | Erica J. Van Loon |
| | | *Attorneys for Plaintiff* |
| | | **Correlated Magnetics Research LLC** |