I. NEEL CHATTERJEE (SBN 173985)
nchatterjee@goodwinlaw.com
ANDREW S. ONG (SBN 267889)
aong@goodwinlaw.com
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA  94063
Tel.: +1 650 752 3100
Fax.: +1 650 853 1038

KEVIN J. SPINELLA (*Pro Hac Vice*)
kspinella@goodwinlaw.com
**GOODWIN PROCTER LLP**
1900 N Street, N.W.
Washington, DC 20036
Tel.: +1 202 346 4000
Fax.: +1 202 346 4444

Attorneys for Defendant
LOGITECH INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| CORRELATED MAGNETICS RESEARCH, LLC, | Case No. 4:21-cv-02554-JST |
| Plaintiff, | **DEFENDANT LOGITECH INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF** |
| v. | |
| LOGITECH INC. | Judge:        Judge Jon S. Tigar |
| Defendant. | Hearing:     May 2, 2022 |
| | Time:         2:00 pm |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................................................. 1

II.    THE PATENTS-IN-SUIT.................................................................................... 2

III.   LEGAL STANDARD ......................................................................................... 4

IV.    ARGUMENT ....................................................................................................... 4

     A.     "a plurality of magnetic structures associated with said base, each magnetic structure of said plurality of magnetic structures comprising a respective plurality of magnetic field sources comprising one or more contiguous pieces of permanent magnet material" ('672 patent, claim 1)................................. 4

     B.     "each magnetic structure comprising one or more pieces of permanent magnet material having three or more magnetic regions, each magnetic structure having three or more magnetic regions creating a polarity pattern having a respective autocorrelation function characterized by a plurality of alignment positions of each magnetic structure" ('292 Patent, Claim 12) .......... 12

     C.     "each magnetic structure comprising one or more pieces of permanent magnet material, wherein each magnetic structure having three or more magnetic regions, each of said magnetic regions comprising a polarity, said one or more magnetic structures creating a polarity pattern having a respective autocorrelation function characterized by a plurality of alignment positions of each magnetic structure" ('292 Patent, claim 20) ........... 13

     D.     "at least two magnetic field sources of at least one of said respective plurality of magnetic field sources are contained in a single contiguous piece of magnetic material" ('672 Patent, Claim 3)............................................... 14

     E.     "composite autocorrelation function" ('672 Patent, Claim 7).............................. 16

V.     CONCLUSION ................................................................................................. 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*24/7 Customer, Inc. v. LivePerson, Inc.*,
235 F. Supp. 3d 1102 (N.D. Cal. 2016) ................................................................................. 4

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001) .............................................................................................. 1

*Datamize, LLC v. Plumtree Software, Inc.*,
417 F.3d 1342 (Fed. Cir. 2005) .......................................................................................... 5, 8

*Honeywell Inc. v. Victor Co. of Japan*,
298 F.3d 1317 (Fed. Cir. 2002) ................................................................................. 9, 10, 15

*Interval Licensing LLC v. AOL, Inc.*,
766 F.3d 1364 (Fed. Cir. 2014) .......................................................................................... 5, 8

*Light Transformation Techs. LLC v. Lighting Sci. Grp. Corp.*,
No. 2:12-CV-826-MHS-RSP, 2014 WL 3402125 (E.D. Tex. July 11, 2014) ........................ 5

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014) .......................................................................................... 4, 8, 16, 17

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008) ............................................................................ 1, 12, 13, 14

*Saso Golf, Inc. v. Nike, Inc.*,
843 Fed.Appx. 291 (Fed. Cir. 2021) ..................................................................................... 8

*White v. Dunbar*,
119 U.S. 47 (1886) ................................................................................................................. 1

**Statutes**

35 U.S.C. § 112(b) ...................................................................................................................... 4

1

## I.     **INTRODUCTION**

Plaintiff Correlated Magnetics Research, LLC's ("CMR") Patents-in-Suit use a series of nonce terms such as "magnetic material," "magnetic region," and "magnetic sources" to create a confusing array of patent claim limitations that defy an ordinary and customary meaning.  The use of these highly flexible, and generic, terms force one of skill in the art to guess as to where one "material" starts and a "region ends."  The claim drafting is so bad that CMR seeks to resolve claim construction by taking different words it chose, such as "magnetic sources" and "magnetic region," and say they should be afforded the same meaning.  "'A patent may not, like a "nose of wax," be twisted one way to avoid anticipation and another to find infringement.'"  *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (citation omitted).  Yet the use of nonce terms by CMR seeks to do precisely what the Supreme Court has forbidden since at least 1886.  *See White v. Dunbar*, 119 U.S. 47, 51 (1886).  CMR uses these nonce terms to allow for flexible interpretations which shift at CMR's whim.  This is precisely the type of functional, non-structural claim usage that should be found indefinite.

CMR takes its position one step further by arguing that all of the terms of the patents should be given their "plain and ordinary meaning" and offering no construction whatsoever.  However, "[w]hen the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (citation omitted).  Here, CMR takes the technical term "contiguous" and ignores its meaning as informed by the specification of the Patents-in-Suit, instead offering merely "plain and ordinary meaning" without any explanation at all about what CMR believes the "plain and ordinary meaning" to be.  Here, the patents make clear that "contiguous," when applied to magnetics, means that two or more magnets are rigidly bonded together.  CMR offers no explanation as to why Logitech's construction is incorrect, instead simply arguing that no definition is required.[1]

---

[1] In the Joint Claim Construction and Prehearing Statement, Logitech asserted that the claim term "compartment substantially restricts movement of said linear holding structure in at least two dimensions" ('909 patent, claim 17) is indefinite and also fails the written description and enablement requirements.  *See* Dkt. No. 67-1 at 7.  Logitech is no longer pursuing the argument that "compartment" is indefinite.  Further, Logitech understands that the Court will not address

1

## II.    THE PATENTS-IN-SUIT

The three CMR Patents-in-Suit are as follows: (1) U.S. Patent No. 8,314,672 (the "'672 patent"), titled "Magnetic Attachment System Having Composite Magnet Structures"; (2) U.S. Patent No. 8,354,909 (the "'909 patent"), titled "Magnetic Attachment System Having a Non-Magnetic Region"; and (3) U.S. Patent No. 10,173,292 (the "'292 patent"), titled "Method for Assembling a Magnetic Attachment Mechanism."  The Patents-in-Suit each relate to systems and methods for magnetically attaching a first object to a second object.  The two objects have the same pattern of magnetic polarities, so that the overall attraction or repelling forces between the two objects are determined by the autocorrelation of the pattern of magnetic polarities.  *See, e.g.*, '672 patent, claim 1; '909 patent, claim 17; '292 patent, claims 12, 20.  The systems and methods include an attachment and release configuration based on movement of magnet structures.  *See, e.g.*, '672 patent at 2:15–27.

Claims 1, 3, and 7 of the '672 patent recite:

1.  A magnetic attachment system comprising:

a base; and

a plurality of magnetic structures associated with said base, each magnetic structure of said plurality of magnetic structures comprising a respective plurality of magnetic field sources comprising one or more contiguous pieces of permanent magnet material, said plurality of magnetic structures comprising a plurality of polarity regions, at least one magnetic structure of said plurality of magnetic structures being based on a respective pattern having a respective autocorrelation function characterized by a single peak autocorrelation position and a plurality of off-peak autocorrelation positions, wherein a greatest off-peak autocorrelation magnitude of said plurality of off-peak autocorrelation positions is less than half of the peak autocorrelation magnitude at said peak autocorrelation position.

3.  The magnetic attachment system of claim 2, wherein at least two magnetic field sources of at least one of said respective plurality of magnetic field sources are contained in a single contiguous piece of magnetic material.

7.  The magnetic attachment system of claim 2, wherein said plurality of magnetic structures have a composite autocorrelation function having a single peak attract force composite autocorrelation position and a plurality of off-peak attract force

---

written description and enablement arguments at the claim construction stage.  Given this, and the objection raised by CMR, *see* Dkt. No. 67 at 1 n.1, Logitech withdraws this term from consideration at this stage of the case but expressly reserves all rights to argue later that the term fails the written description and enable requirements, including, but not limited to, in any expert reports or summary judgment motion submitted by Logitech.

composite autocorrelation positions, wherein the peak attract force composite autocorrelation magnitude at said peak attract force autocorrelation position is at least twice a greatest off-peak attract force composite autocorrelation magnitude of said plurality of off-peak attract force composite autocorrelation positions.

Claim 17 of the '909 patent recites:

17.   A method for assembling a magnetic attachment mechanism, said method comprising:

> affixing to a substantially linear holding structure a plurality of pieces of neodymium iron boron magnetic material, said plurality of pieces of neodymium iron boron magnetic material comprising a first plurality of magnetic field sources, each magnetic field source of said first plurality of magnetic field sources having a polarity, said first plurality of magnetic field sources configured such that said magnetic attachment mechanism is capable of generating a peak attract force, a plurality of off-peak repel forces, and a plurality of off-peak attract forces when said magnetic attachment mechanism is exposed to a second plurality of magnetic field sources moved laterally along the length of said linear holding structure, said first plurality of magnetic field sources being complementary to said second plurality of magnetic field sources, each off-peak attract force of said plurality of off-peak attract forces being less than one half the strength of said peak attract force, and each off peak repel force of said plurality of off-peak repel forces being less than one-half of said peak attract force; and

> positioning said linear holding structure and said plurality of pieces of neodymium iron boron magnets comprising said first plurality of magnetic field sources in a compartment, wherein the compartment substantially restricts movement of said linear holding structure in at least two dimensions.

Claims 12 and 20 of the '292 patent recite:

12.   A method for assembling a magnetic attachment mechanism, said method comprising: assembling one or more magnetic structures, each magnetic structure comprising one or more pieces of permanent magnet material having three or more magnetic regions, each magnetic structure having three or more magnetic regions creating a polarity pattern having a respective autocorrelation function characterized by a plurality of alignment positions of each magnetic structure, said plurality of alignment positions comprising a peak force alignment position and a plurality of off-peak force alignment positions, wherein a peak force is produced at the peak force alignment position, and wherein a plurality of off-peak forces are produced at said plurality of off-peak alignment positions, and wherein one or more of said plurality of off-peak forces are the result of cancellation of an attract force by a repel force.

20.   A method for assembling a magnetic attachment mechanism, said method comprising: affixing to a holding structure one or more magnetic structures, each magnetic structure comprising one or more pieces of permanent magnet material, wherein each magnetic structure having three or more magnetic regions, each of said magnetic regions comprising a polarity, said one or more magnetic structures creating a polarity pattern having a respective autocorrelation function characterized by a plurality of alignment positions of each magnetic structure, said plurality of alignment positions comprising a peak force alignment position and a plurality of

1    off-peak force alignment positions, wherein a peak force is produced at the peak
2    force alignment position, and wherein a plurality of off-peak forces are produced at
said plurality of off-peak alignment positions, and wherein one or more of said
3    plurality of off-peak forces are the result of cancellation of an attract force by a repel
force.

## III.   LEGAL STANDARD

The Court is familiar with the general standards for claim construction, so Logitech does

not repeat them here.  *See, e.g.*, *24/7 Customer, Inc. v. LivePerson, Inc.*, 235 F. Supp. 3d 1102,

1106–07 (N.D. Cal. 2016).  With respect to indefiniteness, a patent specification must "conclude

with one or more claims particularly pointing out and distinctly claiming the subject matter which

the inventor . . . regards as the invention."  35 U.S.C. § 112(b).  "[A] patent is invalid for

indefiniteness if its claims, read in light of the specification delineating the patent, and the

prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the

scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).  The

definiteness requirement seeks to avoid a "'zone of uncertainty'" whereby the public does not

know whether or not a patent claim is infringed.  *Id.* at 909–10.

## IV.   ARGUMENT

### A.   "a plurality of magnetic structures associated with said base, each magnetic structure of said plurality of magnetic structures comprising a respective plurality of magnetic field sources comprising one or more contiguous pieces of permanent magnet material" ('672 patent, claim 1)

| CMR's Construction | Logitech's Construction |
|---|---|
| Plain and ordinary meaning | Indefinite |
| | If not indefinite, "contiguous" means "rigidly bonded together" if not formed within a single piece of magnet material |

The Court should reject CMR's proposal that this claim term simply be accorded its "plain

and ordinary meaning" for at least two different reasons.  *First*, this claim term recites "a plurality

of magnetic structures . . . each magnetic structure . . . comprising a  respective plurality of

magnetic field sources."  Each "magnetic structure" merely includes two or more "magnetic field

sources."  However, nothing in the claim or the specification of the '672 patent provides for any

readily identifiable boundaries for the claimed "magnetic structures."  Thus, as discussed further

4

1 | below, this lack of clarity makes this claim term indefinite.

2 |      *Second*, the '672 patent discloses two kinds of embodiments that pertain to "one or more

3 | *contiguous* pieces of permanent magnetic material."  According to one embodiment, several

4 | magnetic field sources are formed within a single contiguous piece of magnetic material.

5 | According to a second embodiment, several individual magnets are rigidly bonded together to

6 | effectively act as a single piece or as contiguous pieces.  It is unclear whether this claim term,

7 | which requires "contiguous" pieces, encompasses both embodiments or only one of the

8 | embodiments, making the claim term indefinite.  In the alternative, if the term is not indefinite, a

9 | construction of "contiguous" is needed to resolve this ambiguity.

10 |      "[C]laims, when read in light of the specification and the prosecution history, must

11 | provide *objective boundaries* for those of skill in the art."  *Interval Licensing LLC v. AOL, Inc.*,

12 | 766 F.3d 1364, 1371 (Fed. Cir. 2014) (emphasis added).  "The scope of claim language cannot

13 | depend solely on the unrestrained, subjective opinion of a particular individual purportedly

14 | practicing the invention."  *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350 (Fed.

15 | Cir. 2005).  Thus, some "objective standard must be provided in order to allow the public to

16 | determine the scope of the claimed invention."  *Id.*  Reliance on a subjective determination of

17 | infringement can render a claim indefinite.  *Id.* (stating that the "exercise of subjective judgment

18 | without restriction might be objectionable as rendering a claim indefinite") (citation omitted).

19 |      This disputed claim term does not provide objective boundaries to determine the scope of

20 | the claimed invention.[2]  To the contrary, as demonstrated below, the same structure can either

21 | infringe or not infringe claim 1 of the '627 patent depending subjective assessments made by a

22 | POSITA, rendering this claim term indefinite.  The indefiniteness problem arises because this

23 |

---

24 | [2] CMR argues that Logitech has not carried its burden of demonstrating certain claim terms are

25 | indefinite simply because Logitech has not put forth any expert testimony.  *See* Dkt. No. 68 at 7. However, the issue here is a grammatical one, which the Court can easily address.  Moreover, expert testimony is not required to address indefiniteness where, as here, the technology is

26 | understandable to the Court without such testimony.  *See Light Transformation Techs. LLC v. Lighting Sci. Grp. Corp.*, No. 2:12-CV-826-MHS-RSP, 2014 WL 3402125, at *9 (E.D. Tex. July

27 | 11, 2014) ("The Court finds that for this particular term expert testimony is not necessary [for a finding of indefiniteness].") (citing *Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1369

28 | (Fed. Cir. 2004) ("In many patent cases expert testimony will not be necessary because the technology will be 'easily understandable without the need for expert explanatory testimony.'")).

claim term nests one plurality ("of magnetic field sources") within another plurality ("of magnetic structures").  Neither claim 1 of the '672 patent nor the specification describes any characteristics of a "magnetic structure" other than that it includes at least two "magnetic field sources." Accordingly, given an arrangement of magnets, i.e., an arrangement having several "magnetic field sources," one cannot objectively determine whether or not such an arrangement includes the claimed "plurality of magnetic structures."  The ambiguity created by the claim language can be illustrated using an example arrangement of magnets depicted below that has four magnetic field sources.



This example arrangement is similar to the arrangement depicted in Figure 2D of the '672 patent (reproduced below).



The example arrangement of Figure 2D includes seven magnets or magnetic field sources.[3]  The example arrangement above includes only four, merely for the sake of simplicity.

The arrangement of four magnets is analyzed in three different ways below, each depending on a different subjective assessment that can be made by a POSITA.  Under the first two Examples A and B, the arrangement does not satisfy the claim term at issue.  However, under Example C, the exact same arrangement, just with a different subjective interpretation, in fact satisfies the requirements of this claim term.

---

[3] Since the poles of a magnet only exist in pairs and not individually, a "magnetic field source" is a magnet having *both* a north pole and a south pole. *See* '672 patent, 7:64–67 ("Each of the seven magnets of FIG. 2D and other illustrations of this disclosure may also be referred to as . . . magnetic field sources . . . .").

1
2
3
4
5
6
7
8
9



As shown above in Example A, the arrangement of magnets can be viewed as a ***single*** magnetic structure having four "magnetic field sources."  Because this is just a single magnetic structure, per Example A, the arrangement of magnets does not meet the requirement that there be a "***plurality*** of magnetic structures."

10
11
12
13
14
15
16
17
18
19
20
21
22
23



Example B above characterizes the same arrangement of four magnets differently—as two magnetic structures.  Per Example B, the first magnetic structure X1 includes three "magnetic field sources," but the second magnetic structure Y1 includes only one "magnetic field source." Under this interpretation, the requirement for a "plurality of magnetic structures" is satisfied. However, claim 1 of the '672 patent also requires that "each magnetic structure . . . compris[es] a

24
25
26
27
28

7

respective plurality of magnetic field sources." This requirement is not met under Example B because the second magnetic structure Y1 has only one magnetic field source—not a plurality of magnetic field sources.



**Example C**

"Magnetic Structure" X1     "Magnetic Structure" Y1
Each Having a "Plurality of Magnetic
Field Sources"

Lastly, Example C sets forth yet another interpretation of the same arrangement of four magnets. As with Example B, Example C depicts the arrangement of magnets as having two magnetic structures, X1 and Y2. However, each of these magnetic structures has two magnetic field sources. Based on this interpretation of the arrangement of four magnets, the requirements of "a plurality of magnetic structures" and "each magnetic structure . . . comprising a respective plurality of magnetic field sources" of claim 1 of the '672 patent are satisfied.

As demonstrated above, depending on a subjective, arbitrary demarcation or boundary of the "respective plurality of magnetic field sources," the same arrangement of magnets may (as shown in Annotation C) or may not (as shown in Annotations A and B) meet the requirements of this claim term. But claim 1 of the '672 patent and the specification do not provide an objective manner by which a POSITA could determine the proper boundary to use, making this claim term ambiguous and therefore indefinite. *See, e.g, Interval Licensing*, 766 F.3d at 1371; *Nautilus*, 134 S. Ct. 2120 at 2130; *Datamize* at 1350; *Saso Golf, Inc. v. Nike, Inc.*,  843 Fed.Appx. 291, 297 (Fed. Cir. 2021) (finding a claim invalid because "[n]othing in the record indicates that an artisan would inherently know the locations of [certain] boundaries and the patent provides no guidance"

1    where the "scope of the claim depends on these measurements," and as such, the claim "does not

2    afford clear notice of what is claimed, thereby apprising the public of what is still open to them")

3    (internal quotations and citations omitted).

4          In addition to being indefinite, CMR's proposed construction of this claim term as "plain

5    and ordinary meaning" is wrong, particularly as to the use of the word "contiguous" in the phrase

6    "one or more contiguous pieces of permanent magnet material."  As the Federal Circuit has

7    recognized, "the most common meaning of 'contiguous' connotes **actual contact**, not general

8    proximity[.]"  *Honeywell Inc. v. Victor Co. of Japan*, 298 F.3d 1317, 1324 (Fed. Cir. 2002)

9    (emphasis added).  Furthermore, "[t]he absence of intervening structure is inherent even in the

10   broad definition of 'contiguous.'"  *Id.* (citing *Webster's Third International Dictionary* 492

11   (1966) ("contiguous" defined as "next or adjoining with nothing similar intervening . . .

12   immediately preceding or following in time or sequence: without intervening interval or item").

13         The '672 patent does disclose "magnetic structures" that are consistent with this most

14   common definition of "contiguous."  Specifically, the '672 patent states that "magnet structures

15   may include *contiguous* magnet material with a spatial and/or polarity pattern of magnetization

16   along the material."  '672 patent at 6:61–63 (emphasis added).  But not all structures of magnetic

17   field sources described in the '672 patent are contiguous according to the plain and ordinary

18   meaning of that term.  Rather, as discussed below, some magnetic structures may include

19   individual magnets that are rigidly bonded together with glue or potting material in between.

20         In particular, the '672 patent specification describes "a magnetic structure" comprising a

21   "plurality of magnetic field sources" with reference to Figures 2D (depicting a uniformly coded

22   magnetic structure) and 2E (depicting a variably coded magnetic structure), shown below:



23

24

25

26

27

28

9

'672 patent, Figs. 2D, 2E.  Each of the seven magnets in these figures constitutes a "magnetic field source." *Id*. at 7:64–67 ("Each of the seven magnets of FIG. 2D and other illustrations of this disclosure may also be referred to as . . . magnetic field sources . . . .").

The '672 patent further states that "[a] magnet structure typically refers to a set of magnets *rigidly bonded together* as if glued or potted to act mechanically as a single piece." *Id*. at 7:53–56 (emphasis added).  As disclosed in the specification, a set of magnets rigidly bonded together may be separated by intervening layers of glue or potting material;[4] thus, the magnets are not contiguous according to the common definition of the term.  *See Honeywell*, 298 F.3d at 1324 (noting that "the most common meaning of 'contiguous' connotes actual contact, not general proximity").  In fact, the '672 patent acknowledges that such a magnetic structure is not contiguous.  *See* '672 patent at 7:51–53 ("The seven magnets bonded together in a magnet structure 212 *behave essentially* as a single magnet") (emphasis added); 7:53–56 ("a set of magnets rigidly bonded together *as if* glued or potted *to act* mechanically *as a single piece*") (emphasis added).  Thus, the magnetic structure of Figures 2D and 2E is not actually contiguous, but behaves or acts as if a single, contiguous piece.

In light of these different embodiments disclosed in the '672 patent specification, it is unclear whether the claim limitation "contiguous" only encompasses a magnetic structure that is actually contiguous as that term is commonly understood to mean, or whether it also encompasses structures having magnets that are "rigidly bonded together." *Id*. at 7:53–56.  This further renders

---

[4] To the extent a set of magnets may be rigidly bonded together without any intervening layers of glue or another material, adjacent magnets must nevertheless be in contact with one another so as to be "contiguous." *See Honeywell*, 298 F.3d at 1324.  Moreover, this claim term recites "a respective plurality of magnetic field sources comprising one *or more* contiguous pieces of permanent magnet material."  Thus, referring to the structure of FIG. 2D, each of the seven magnets may comprise a respective one of the "one or *more* [] pieces of permanent magnet material."  But, as this claim term states explicitly, those pieces must be "contiguous."

10

1   the claim scope indefinite.  Alternatively, if the Court concludes "contiguous" is not indefinite,

2   the term should be construed to require that "contiguous" magnets are at least "rigidly bonded

3   together," e.g., using glue or potting material, if the "magnetic structure" is not formed within a

4   single contiguous piece of magnet material.

5          To the extent the Court does not find the entire claim term indefinite, the requirement that

6   "contiguous" must mean "rigidly bonded together" when discussing two or more pieces of

7   permanent magnet material may address the lack of clarity addressed in the context of Examples

8   A, B, and C above.  For example, Figure 6A of the '672 patent appears to depict "a plurality of

9   magnetic structures" where "each magnetic structure . . . compris[es] a  respective plurality of

10  magnetic field sources."  *Id*. at 16:19–24 ("Referring to FIG. 6A, the base magnet structure

11  comprise three repeated Barker 7 coded magnet structures 214a, 214b, and 214c . . . .").

12



FIG. 6A

18          In the embodiment of Figure 6A, the boundaries of the magnetic structures 214a, 214b,

19  and 214c are readily discernable because, in each of those structures, the seven magnets are

20  rigidly bonded together.  Without such a rigid bonding, however, any random grouping of

21  magnetic field sources, as shown above in Examples A, B, C, is possible, where the same

22  arrangement can be determined to be infringing or non-infringing based on a subjective, arbitrary

23  demarcation of magnetic structures.

24  //

25  //

26  //

27

28

DEFENDANT LOGITECH INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF
CASE NO. 4:21-cv-02554-JST

1
2
3

**B.    "each magnetic structure comprising one or more pieces of permanent magnet material having three or more magnetic regions, each magnetic structure having three or more magnetic regions creating a polarity pattern having a respective autocorrelation function characterized by a plurality of alignment positions of each magnetic structure" ('292 Patent, Claim 12)**

4
5
6

| CMR's Construction | Logitech's Construction |
|---|---|
| Plain and ordinary meaning | Indefinite |

7
8
9

CMR's proposed construction is improper because this claim term has more than one ordinary meaning and, thus, reliance on the "plain and ordinary meaning" of this claim term does not resolve the parties' dispute. *See O2 Micro*, 521 F.3d at 1361.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

As a threshold matter, the specification does not describe or depict "magnetic regions" anywhere; the term is only used in the claims of the '292 patent.  For this reason alone, the claim term is unclear.  CMR concedes this shortcoming, but contends that "'magnetic region' as used in this claim phrase should be interpreted in the same way as 'magnetic field source' used in the '672 Patent."  Dkt. No. 68 at 8.  CMR has not cited any portion of the specifications of the '292 or '672 patents that supports such equivalence.[5]  Moreover, the specification defines a "magnetic field source" as a magnet, *see* '292 patent at 7:30–34 ("Each of the seven magnets of FIG. 2D and other illustrations of this disclosure may also be referred to as . . . magnetic field sources . . . ."), which has a north pole and a south pole.  *See id.*, Fig. 2, 6:32–33 ("FIG. 2A depicts an exemplary bar magnet showing the South and North poles and associated magnetic field vectors.").  A "magnetic region," however, need not be a magnet; rather it can be a region of material that can be magnetized.  *See, e.g.*, U.S. Patent No. 7,561,360 at 2:39–42 (stating that "a magnetic field is collectively applied . . . so as to magnetize the magnetic regions 92a, 92c"), Fig. 34(b); U.S. Patent No. 6,590,750 at 4:15–18 (disclosing "a first magnetic region changeable into each of two magnetic states," i.e., the magnetization of the first magnetic region can be changed); U.S. Patent No. 6,818,961 at 4:42–54 (disclosing "a pinned magnetic region" the magnetization of which

26
27
28

---

[5] CMR points to statements provided in Logitech's portions of the Joint Claim Construction and Prehearing Statement to support its argument here.  *See* Dkt. No. 68 at 8; Dkt. No. 67-1 at 4.  However, in that submission, Logitech merely contemplated the suggested equivalence and nevertheless asserted that the claim term is indefinite.  As Logitech points out above, the '292 and '672 patents do not teach or suggest such equivalence, and CMR points to no evidence otherwise.

12

1   cannot be changed and "a free magnetic region" the magnetization of which can be changed), Fig.

2   2.  Therefore, the purported equivalence that CMR argues is inconsistent with the ordinary

3   meaning of "magnetic region."

4   　　　Regardless, the claim term recites that "each magnetic structure comprises one or more

5   pieces of permanent magnet material" and further recites that "each magnetic structure [has] three

6   or more magnetic regions."  It is unclear whether the "three or more magnetic regions" are

7   included *within* the "one or more pieces of permanent magnet material," or whether the "three or

8   more magnetic regions" are included in each magnetic structure *in addition to* the "one or more

9   pieces of permanent magnet material."

10   　　　Even when it is assumed that the "three or more magnetic regions" are included within the

11   "one or more pieces of permanent magnet material," this claim term can be interpreted in two

12   different ways, making it ambiguous.  Specifically, "one or more pieces of permanent magnet

13   material having three or more magnetic regions" can either be interpreted as (1) "one or more

14   pieces of permanent magnet material" with *each piece* "having three or more magnetic regions"

15   or (2)"one or more pieces of permanent magnet material" with *the pieces together* "having three

16   or more magnetic regions."  Since there are two different ordinary meanings of this claim term,

17   "plain and ordinary meaning" is an inadequate construction of this claim term.  *See O2 Micro*,

18   521 F.3d at 1361.  The specification does not describe or define "magnetic regions" and also does

19   not describe or define whether each piece of permanent magnet material has three or more

20   magnetic regions or those piece collectively include the three or more magnetic regions.

21   Therefore, this claim term is ambiguous, and hence, indefinite.

22   　　**C.**　　**"each magnetic structure comprising one or more pieces of permanent**
          **magnet material, wherein each magnetic structure having three or more**
23        **magnetic regions, each of said magnetic regions comprising a polarity, said**
          **one or more magnetic structures creating a polarity pattern having a**
24        **respective autocorrelation function characterized by a plurality of alignment**
          **positions of each magnetic structure" ('292 Patent, claim 20)**
25

| CMR's Construction | Logitech's Construction |
|---|---|
| Plain and ordinary meaning | Indefinite |

13

CMR's proposed construction is improper because this claim term has more than one ordinary meaning, as discussed below, and as such, reliance on the ordinary meaning of this claim term does not resolve the parties' dispute.  *See O2 Micro*, 521 F.3d at 1361.

As discussed above, *see* Section IV.B, *supra*, the specification does not describe or depict "magnetic regions," which makes this claim term unclear.  Moreover, the claim term recites that "each magnetic structure comprises one or more pieces of permanent magnet material," and further recites that "each magnetic structure [has] three or more magnetic regions."  It is unclear whether the "three or more magnetic regions" are included *within* the "one or more pieces of permanent magnet material," or whether the "three or more magnetic regions" are included in each magnetic structure *in addition to* the "one or more pieces of permanent magnet material."

Even when it is assumed that the "three or more magnetic regions" are included within the "one or more pieces of permanent magnet material," this claim term can be interpreted in two different ways, *see* Section IV.B, *supra*, making the claim term ambiguous, and hence, indefinite.

**D.**  **"at least two magnetic field sources of at least one of said respective plurality of magnetic field sources are contained in a single contiguous piece of magnetic material" ('672 Patent, Claim 3)**

| CMR's Construction | Logitech's Construction |
|---|---|
| Plain and ordinary meaning | "a set of two or more magnets rigidly bonded together to act mechanically as a single piece or two or more magnetic field sources having a spatial and/or polarity pattern that are formed within a single piece of magnet material" |

For this claim term, CMR states that "[b]y proposing a construction, Defendant admits the term is not indefinite."  Dkt. No. 68 at 10.  However, Logitech does not contend that this term is indefinite.  *See* Dkt. No. 67-1 at 5.  Rather, Logitech's position is that CMR's proposed construction of plain and ordinary meaning is incorrect because, based on the plain and ordinary meaning of "contiguous" two embodiments disclosed in the specification would be excluded.  On the other hand, Logitech's proposed construction, which properly defines "contiguous" as that term is used in the claim, would cover the same two embodiments.  Accordingly, the Court should adopt Logitech's proposed construction.

14

This claim term explicitly recites that "at least two magnetic field sources . . . are *contained in a single contiguous piece* of magnetic material."  As discussed above, *see* Section IV.A, *supra*, the plain and ordinary meaning of "contiguous" requires "actual contact, not general proximity."  *Honeywell*, 298 F.3d at 1324.  Regarding "magnetic field sources," the '672 patent states that "[e]ach of the seven magnets of FIG. 2D and other illustrations of this disclosure may also be referred to as . . . magnetic field sources . . . ."  '672 patent at 7:64–67.  Regarding the term "contiguous," the '672 patent discloses an embodiment where more than one magnets can be formed by specialized magnetization in a single contiguous piece of magnetic material.  *See id*. at 6:61–63 ("coded magnet structures may include contiguous magnet material with a spatial and/or polarity pattern of magnetization along the material").  The polarity pattern of magnetization along the material would form two or more magnets, i.e., "at least two magnetic field sources."

As already discussed above, the '672 patent also discloses another embodiment where several magnets are rigidly bonded together, e.g., using glue or potting material.  *Id*. at 7:53–56 ("A magnet structure typically refers to a set of magnets rigidly bonded together *as if* glued or potted *to act mechanically as a single piece*") (emphasis added); *id.* at 7:51–53 ("The seven magnets bonded together in a magnet structure 212 behave essentially as *a single magnet*") (emphasis added).  A set of magnets rigidly bonded together, e.g., using glue or potting material, are separated by intervening layers of glue or potting material and, thus, are not in contact as required by the plain and ordinary meaning of "contiguous."  Nevertheless, the '672 patent describes the set of magnets that are rigidly bonded together as acting "as if . . . a single piece."  Therefore, "contiguous" in the context of this claim term should be construed to require magnets that are "rigidly bonded together," e.g., using glue or potting material.

In alleging that Logitech's construction improperly imports limitations from disclosed embodiments, CMR argues that the disclosure of the '672 patent cited by Logitech "relates to a 'magnet structure' not [to] 'magnetic field sources."  Dkt. No. 68 at 11.  CMR's argument is wrong because the '672 patent explicitly states that "[e]ach of the seven *magnets* of FIG. 2D . . . may also be referred to as . . . magnetic field sources . . . ,"  '672 patent at 7:64–67, and that a "magnet structure typically refers to a set of magnets," i.e., a set of magnetic field sources,

1   "rigidly bonded together as if glued or potted to act mechanically as a single piece," *id*. at 7:53–

2   56, i.e., the claimed "single contiguous piece of magnetic material."  Thus, the portion of the '672

3   patent specification that Logitech cites in fact supports Logitech's proposed construction.

4          CMR also asserts that Logitech's construction is incorrect because, "[w]hile the

5   specification states that a magnet structure *typically* refers to a set of magnets rigidly bonded

6   together, it also discloses 'flexible bonding arrangements' and 'holding mechanisms' for

7   maintaining the orientation of the magnets of the magnet structure."  Dkt. No. 68 at 11 (emphasis

8   in original).  This argument, however, is flawed.  While the disclosed "flexible bonding

9   arrangements" and "holding mechanisms" can help maintain the orientation of the magnets of a

10  magnet structure, unless the magnets are rigidly bonded together (or are actually formed within a

11  single piece of magnetic material), they cannot be reasonably understood to be "contained in a

12  *single contiguous  piece* of magnetic material," as this claim term explicitly recites.

13         In summary, two or more magnetic field sources can be formed: (i) within "contiguous

14  magnet material with a spatial and/or polarity pattern of magnetization along the material," *see*

15  '672 patent at 6:61–63, or (ii) additionally, as a set of magnets rigidly bonded together.

16  Therefore, the construction proposed by Defendant is therefore proper.

17         **E.      "composite autocorrelation function" ('672 Patent, Claim 7)**

| CMR's Construction | Logitech's Construction |
|---|---|
| Plain and ordinary meaning | Indefinite |

21         The Court should reject CMR's contention that the term "composite autocorrelation

22  function" should be accorded its plain and ordinary meaning.  Instead, the term is indefinite

23  because, when read in light of the specification and the file history, a POSITA would not

24  understand the proper scope of the invention.  *See Nautilus*, 572 U.S. at 901.

25         CMR argues incorrectly that the "'composite autocorrelation function' of claim 7 simply

26  refers to the magnetic structures of claim 2," where the "composite" function is the

27  "combination" of the individual, respective autocorrelation functions of the magnetic structures of

28  claim 2.  *See* Dkt. No. 68 at 12.  CMR further asserts that "the word 'composite' is being used in

1   its normal sense to refer to something being made up of various parts or components." *Id.*

2   The fatal flaw in CMR's argument is that this claim term refers to autocorrelation

3   *functions* of at least two magnetic structures, but a combination of two or more autocorrelation

4   *functions* is not defined. In particular, the '672 patent describes that if two magnetic structures

5   are arranged adjacently, along a line, a correlation function for the combined structure can be

6   determined. *See* '672 patent at 17:3–5 ("FIG. 7B shows the normal (perpendicular) magnetic

7   force 706 as a function of the sliding position between the two structures 704a and 704b of FIG.

8   7A."); Figs. 7A and 7B.

9



10

11

12

13

14

15   FIG. 7A                                          FIG. 7b

16   Thus, the force or autocorrelation function[6] depicted in FIG. 7B is *not a combination of*

17   *the respective individual autocorrelation functions* of the two structures shown in FIG. 7A.

18   Rather, it is an autocorrelation function of the *combined* or composite structure. However, this

19   claim term does not recite an "autocorrelation function a composite structure." Rather, it recites a

20   "composite autocorrelation function." The specification does not describe how to combine two or

21   more autocorrelation *functions*. To the extent the recited claim term resulted from a drafting

22   error, that error cannot be cured by alleging that individual autocorrelation functions can simply

23   be combined, when the specification is entirely silent on how such combination can be

24   performed. Therefore, this claim term is indefinite.

25   //

26   //

27   ─────────────────────

28   [6] *See* '672 patent at 6:39-41 ("Forces from interacting coded magnet structures may be referred to as a spatial force function or force function resulting from correlated fields."); 10:44-48 ("a spatial force function [is] based upon the correlation function").

17

1

**V.** <u>**CONCLUSION**</u>

2       For the foregoing reasons, Logitech requests that the Court reject CMR's proposal to give

3   the disputed claim limitations their plain and ordinary meaning and to adopt Logitech's proposed

4   constructions, including that certain claim terms are indefinite.

5

6   Dated:  March 23, 2022                         By: /s/ *Andrew S. Ong*

7                                                     I. Neel Chatterjee
                                                      Andrew S. Ong
8                                                     Kevin J. Spinella
                                                      GOODWIN PROCTER LLP
9
                                                      Attorneys for Defendant
10                                                    LOGITECH INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

1

## <u>CERTIFICATE OF SERVICE</u>

2   I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the

3 United States District Court for the Northern District of California by using the CM/ECF system

4 on March 23, 2022.  I further certify that all participants in the case are registered CM/ECF users

5 and that service will be accomplished by the CM/ECF system.

6   I certify under penalty of perjury that the foregoing is true and correct.  Executed this 23rd

7 day of March 2022.

8
                   */s/ Andrew S. Ong*

9
                   ANDREW S. ONG

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28