ERICA J. VAN LOON (CABN 227712)
evanloon@nixonpeabody.com
ANDREW H. WINETROUB (CABN 291847)
awinetroub@nixonpeabody.com
NIXON PEABODY LLP
300 South Grand Avenue, Suite 4100
Los Angeles, California 90071-3151
Tel: (213) 629-6000
Fax: (213) 629-6001

GARY R. SORDEN (admitted pro hac vice)
gsorden@coleschotz.com
VISHAL PATEL (admitted pro hac vice)
vpatel@coleschotz.com
JAMES R. PERKINS (admitted pro hac vice)
jperkins@coleshotz.com
COLE SCHOTZ P.C.
901 Main Street, Suite 4120
Dallas, Texas 75202
Tel: (469) 557-9390
Fax: (469) 533-1587

Attorneys for Plaintiff,
**Correlated Magnetics Research, LLC**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| CORRELATED MAGNETICS RESEARCH, LLC<br><br>Plaintiff,<br><br>v.<br><br>LOGITECH INC.,<br><br>Defendant. | Case No.: 4:21-cv-02554-JST<br><br>**CMR'S CLAIM CONSTRUCTION REPLY BRIEF**<br><br>Judge: Judge Jon S. Tigar<br>Date: May 9, 2022<br>Time: 2:00 p.m. |

Plaintiff, Correlated Magnetics Research, LLC ("CMR") respectfully submits its Claim Construction Reply Brief.

## I. DISPUTED TERMS

### A. "a plurality of magnetic structures associated with said base, each magnetic structure of said plurality of magnetic structures comprising a respective plurality of magnetic field sources comprising one or more contiguous pieces of permanent magnet material" ('672 patent, claim 1)

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning | Indefinite. <br><br> If not indefinite, "contiguous" means "rigidly bonded together" if not formed within a single piece of magnet material |

#### i. "Magnetic structure" is not indefinite

Logitech contends that this claim term is indefinite because readers may have different interpretations of the claim term's scope. Logitech's conclusion relies on multiple misstatements of the legal test for indefiniteness and a failure to view the '672 intrinsic record through the eyes of a POSITA.

First, evaluating indefiniteness by whether a claim term is amenable to multiple interpretations was a legal test proposed by Nautilus and rejected by the Supreme Court in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910-911 (2014). That cannot serve as the basis to invalidate this claim.

Second, indefiniteness is not determined through the eyes of a layperson, but instead "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, *those skilled in the art* about the scope of the invention." *Id.* at 898-899 (emphasis added).

2

Logitech offered no evidence that a POSITA would fail to understand this claim term or the scope of the claim as a whole. And, as described below, Logitech's arguments and interpretations belie its contention that this technology is readily understood by any layperson.

Third, Logitech repeatedly argues that claim terms are indefinite because they are capable of being applied to multiple types of structure. But a term is not indefinite merely because it encompasses more than one type of structure. "Breadth is not indefiniteness." *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1341 (Fed. Cir. 2005), quoted in *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1367 (Fed. Cir. 2017). Logitech's accusation that CMR is treating the claims like a "nose of wax" is unfounded. CMR has taken no positions for purposes of invalidity, much less any positions that accord the claim terms different scope than CMR is taking for infringement.

Logitech bears the burden of establishing the facts critical to indefiniteness by clear and convincing evidence. *See Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1228 (Fed. Cir. 2016). Here, Logitech elected to forego expert testimony. It offers only attorney argument. Accordingly, Logitech provided no evidence that a POSITA is not informed with reasonable certainty as to the scope of the claim, and it's contention that this claim is indefinite should be rejected.

It is important to note that claims, not individual claim terms, are evaluated for indefiniteness. *Id. Cox* recognized that a claim term, "processing system," was potentially unclear on its own, but held that where a POSITA can nevertheless reasonably determine the scope of the claim as a whole, then the claim is not indefinite. *Cox*, 838 F.3d at 1231–32. The goal is to ensure that the patentee has provided "reasonable certainty" about the scope of the patent right. *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014). Thus, the proper inquiry is whether a POSITA would be able to objectively determine whether a device fell within the scope of the claim.

Logitech never actually argues that "magnetic structure" renders the scope of '672 Claim 1 unclear. Instead, Logitech argues that the boundaries of a "magnetic structure,"

comprised of a plurality of magnetic field sources, are unclear. But CMR did not claim a generic "magnetic structure" comprised of magnetic field sources. Instead, CMR claimed a very unique magnetic structure—one with a particular polarity pattern yielding an autocorrelation function with a single peak, multiple off-peaks, and where the greatest off-peak is less than half the magnitude of the peak. *See* '672 Claim 1. At no point does Logitech argue that a POSITA would have any trouble determining whether a device falls within the scope of '672 claim 1 when that claim is considered as a whole.

Logitech argues that the structures on pages 6-9 of its brief "can either infringe or not infringe claim 1 of the '672 patent depending subjective assessments made by a POSITA," but that is plainly wrong. The drawings on those pages depict magnet structures with uniformly oriented polarity regions. As '672 Figs. 5A-B demonstrate, such a structure cannot satisfy the autocorrelation function limitation of claim 1, because the greatest off-peak magnitude of a uniformly-coded structure is not less than half of the magnitude of the peak:



The specification provides many examples that inform a POSITA of the meaning of "magnet structure" in the context in which it is used in claim 1. For example, Fig. 6A is a "magnet structure" that is itself comprised of three "magnet structures," 214a, 214b, and 214c.

4



FIG. 6A

'672 at Fig. 6A, 16:18-57. Each of those three "magnet structures" have a polarity pattern corresponding to a Barker-7 code modulo (each of which would meet the requirements of the autocorrelation function of claim 1, as illustrated in Fig. 4A and 4B). '672 at 16:18-57. The specification focuses on the polarity pattern as a means of delineating the boundaries of multiple magnet structures. *Id.*

The focus on polarity patterns also delineates the boundaries of the two overlapping magnet structures depicted in Fig. 19c:



FIG. 19C

Figure 19C is a two-dimensional magnetic structure comprised of two one-dimensional magnet structures. '672 at 30:6-12. The specification does not draw those boundaries based on mechanical bonding or glue, but on the patterns of the respective magnets making up each of the two magnetic structures.

The specification provides examples sufficient to enable a POSITA to determine whether a structure falls within the scope of claim 1. Logitech has no offered any evidence, much less clear and convincing evidence, that a POSITA would be unable to reasonably determine the boundaries of claim 1. As such, the claim is not indefinite. *Cox*, 838 F.3d at 1231-1232.

ii. "Contiguous" is not indefinite

Logitech's arguments regarding the meaning of the term "contiguous" likewise improperly isolate a term from the claim language, the teachings of the specification, and the perspective of a POSITA, all to argue that the isolated term is indefinite. Logitech's approach is legally impermissible for the same reasons as described above.

Logitech's argument appears to be (1) that "contiguous" should be construed according to a construction in a different, unrelated case, and (2) when that construction is adopted, some embodiments disclose magnetic structures that are not "contiguous," and (3) a POSITA would not know which embodiments fall within the scope of the claims therefore the term is indefinite.

First, Logitech's position boils down to an argument that if there is a dispute about the scope of a claim term, then a POSITA would not be able to determine the boundaries of the claim and the claim is therefore indefinite. Nearly every patent case involves at least one dispute about the meaning of claim terms. Logitech offers no legal support for the proposition that a garden-variety dispute over the construction of a claim term means the claim is indefinite.

The remainder of Logitech's argument is founded on an improperly restrictive construction of "contiguous." First, Logitech's reliance on the definition of "contiguous" in *Honeywell Inc. v. Victor Co. of Japan* is misplaced. That case involved a different technology, with a different intrinsic record—including a definition the patentee relied on during prosecution, and a dictionary that predates the '672 patent application by more than 40 years. *Honeywell*, 298 F.3d 1317 at 1325-1327 (Fed. Cir. 2002). None of that is part of the intrinsic record for the '672 patent. If Logitech wanted to rely on a dictionary definition, either directly or by bootstrapping *Honeywell*, Logitech had an obligation to disclose that evidence under the Court's scheduling order. Logitech did not and therefore should not be allowed to rely on that evidence for the first time in its responsive claim construction brief.

Second, Logitech's assumption that adjacent magnets must be "rigidly bonded" is at odds with the way a POSITA would understand "contiguous" in light of CMR's disclosure. The '672 specification notes that *some* arrangements of individual magnets may utilize a bonding or holding mechanism to keep magnets in the proper position and orientation. 8:8-11. But a POSITA would not understand that to mean *all* arrangements of discrete magnets necessarily require such structure.

For example, Fig. 2E depicts a variably coded magnet structure made from seven individual, discrete magnets:



Fig. 2E would require a holding mechanism to maintain its polarity sequence, because the three magnets on the left are all oriented with their north pole facing the same direction, and the natural tendency is for adjacent magnets to have opposite orientation. *See* '672 at 7:56-60.

But a POSITA would understand that these inventions are about polarity patterns with certain autocorrelation properties. The polarity pattern of Fig. 2E could be achieved with four pieces of magnetic material instead of seven, and thereby avoid the need for bonding or a holding structure to keep adjacent pieces of magnetic material in their desired orientation, as depicted below:[1]

---

[1] Indeed, the magnetic structure could be made with even fewer magnets by magnetizing at least one magnet with more than one polarity. For example, the two polarity regions on the far right could be made from a single piece of magnetic material. This technique was well known in the prior art, including art of record. For example, Ligtenberg Fig. 5A, which is discussed in more detail below, depicts a single piece of magnet with two polarities.



The patent recognizes the flexibility in how magnetic structures might be constructed. For example, it contemplates magnet structures comprised of magnets of "unequal physical size" ('672 at 8:27-29). Claim 3 requires at least two magnetic field sources on a single piece of magnetic material—precisely what is depicted by the triple- and double-length magnets in the drawing above.

Depicting individual magnets of the same width was useful to simplify the process of teaching how to calculate force functions, *see* Figs. 3-4, but is not limiting. As such, the need for rigid bonding was specific to some of the examples provided in the patent, but is not necessary for magnets in a magnet structure to be considered "contiguous."

A related International Patent Application, PCT/US2010/049410, provides additional insights into the patentee's use of the term "contiguous." There, the patentee described "contiguous" as meaning "(i.e., alongside or otherwise in contact)." This further counsels away from a narrow definition that would require rigid bonding.

There is no evidence that a POSITA would be unable to reasonably understand the meaning of "contiguous." Nor is there a need to give "contiguous" a construction beyond its ordinary meaning.

**B. "each magnetic structure comprising one or more pieces of permanent magnet material having three or more magnetic regions, each magnetic structure having three or more magnetic regions creating a polarity pattern having a respective autocorrelation function characterized by a plurality of alignment positions of each magnetic structure" ('292 Patent, Claim 12)**

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning | This claim limitation is indefinite. |

A POSITA would have no difficulty understanding the meaning of the term "magnetic regions." As that term is used in the context of the '292 patent, which claims a method for assembling a magnetic attachment mechanism, a magnetic region is just what it sounds like: an area that is magnetized with a polarity (*e.g.*, either "north" or "south").

There is no legal support for Logitech's claim that a term that is not described in the specification is necessarily unclear, much less indefinite. Nor is it correct that the specification does not depict magnetic regions—it is brimming with depictions of areas that have either a north polarity or a south polarity.

Moreover, the claims themselves provide guidance to a POSITA about the meaning of "magnetic regions" such that the term does not require additional construction. Claim 1 requires that the magnetic regions form a polarity pattern having a particular autocorrelation function. The specification is replete with discussion of the application of codes to polarity patterns in magnetic systems. A POSITA would have to ignore all of the teachings of the patent, including the method of calculating force functions in Figs 3-4, to remain oblivious to the meaning of "magnetic region."

The claims that depend from claim 1 recite additional limitations that reinforce a POSITA's ability to reasonably understand what is meant by a "magnetic region." Claim 8 recites a "non-magnetic" region between two "magnetic regions." That informs a POSITA that the "magnetic regions" of claim 1 are magnetized (and not non-magnetized).[2]

Claim 9 depends from claim 8 and specifies that the "non-magnetic" region is made from magnetic material that is not magnetized. This reinforces the POSITA's understanding that the "magnetic region" of claim 1 must be magnetized (and not merely *magnetizable*, as Logitech suggests).

Claims 10 and 11 both depend from claim 8. Together they inform a POSITA that two magnetic regions separated by a non-magnetic region can either have the same polarity

---

[2] Logitech's extrinsic evidence, including U.S. Patents 7,561,360, 6,590,750, and 6,818,961, are all in the field of magnetic data storage media (*e.g.*, cassette tapes or hard drives). Logitech offers no evidence to suggest that a POSITA in magnetic attachment mechanisms would share the interpretation of a practitioner in those other fields.

9

or the opposite polarity. Taken all together, the '292 patent claims inform a POSITA that a "magnetic region" is an area that has been magnetized to have a polarity.

Finally, the examiner's understanding of the scope of the language during prosecution shows that this claim language is not indefinite. The Federal Circuit has relied on an examiner's understanding of the boundaries of a claim's scope to find that claims are not indefinite. *See*, *e.g.*, *Tinnus Enters., LLC v. Telebrands Corp.*, 733 F. App'x 1011, 1020 (Fed. Cir. 2018) (unpublished), cited in *Nature Simulation Sys. Inc. v. Autodesk, Inc.*, 23 F.4th 1334, 1343 (Fed. Cir. 2022).

In the "Reasons for Allowance" dated October 1, 2018, the '292 Patent examiner found that the asserted patent claims were not anticipated or rendered obvious by an Apple patent application. *See* Declaration of Vishal Patel at Ex. A (Excerpt From '292 File History) at 4. The '292 examiner specifically identified the "magnetic structure," "magnetic field sources," and "three or more magnetic regions" in the Apple art.[3] *Id*. at 4. The intrinsic record thus demonstrates that a POSITA would reasonably understand the meaning of a "magnetic region."

The examiner's reasons for allowance also demonstrate that a POSITA would understand that "three or more magnetic regions" are a limitation on the "magnetic structure" and not on the individual pieces of magnetic material. First, the examiner actually said those words, "[f]urther *each magnetic structure* of Ligtenberg provides three or more magnetic regions see Figure 5A." *Id* (emphasis added). The examiner did reflect any uncertainty about which structure had to have "three or more magnetic regions."

Second, the only way the examiner could have relied on Ligtenberg for disclosure of "three or more magnetic regions" is by understanding that the magnetic regions are a further limitation on the magnetic structure, not the pieces of magnetic material. Ligtenberg discloses a plurality of permanent magnets, *e.g*., 162 and 164. *See* Patel Decl. at Ex. B,

---

[3] The examiner nevertheless allowed the claims, finding that Ligtenberg neither anticipated nor rendered obvious the '292 patent claims, and that there was no teaching in the prior art that would motivate a POSITA to combine Ligtenberg with other art to render the '292 claims obvious.

10

(Ligtenberg Pre-Grant Publication 20070138806) at ¶0047. Ligtenberg Fig. 5A shows that permanent magnets 162 and 164 each have just two magnetic regions – one north and one south:



None of the individual magnets in Ligtenberg contain three or more magnetic regions. That the patent examiner nevertheless found that Ligtenberg disclosed the recited "three or more" magnetic regions is evidence that a POSITA would reasonably understand the meaning of "three or more magnetic regions" as a required characteristic of the "magnet structure," and not of the individual pieces of permanent magnet material.

No construction is necessary for "magnetic region." It is a straightforward term that is readily understood by a POSITA, as illustrated by the examiner's comprehension of that term in the intrinsic record. Logitech has not met its burden of establishing that the claim is indefinite by clear and convincing evidence.

> **C. "each magnetic structure comprising one or more pieces of permanent magnet material, wherein each magnetic structure having three or more magnetic regions, each of said magnetic regions comprising a polarity, said one or more magnetic structures creating a polarity pattern having a respective autocorrelation function characterized by a plurality of alignment positions of each magnetic structure" ('292 Patent, claim 20)**

| Plaintiff's Construction | Defendant's Construction |
| --- | --- |
| Plain and ordinary meaning | This claim limitation is indefinite. |

This phrase is not indefinite for the same reasons as Section B, above. The examiner's allowance described above applied to each of the three independent claims of the

'292 patent. *See* Patel Ex. A at 4. Logitech has not met its burden of establishing indefiniteness by clear and convincing evidence.

### D. "at least two magnetic field sources of at least one of said respective plurality of magnetic field sources are contained in a single contiguous piece of magnetic material" ('672 Patent, Claim 3)

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning | "a set of two or more magnets rigidly bonded together to act mechanically as a single piece or two or more magnetic field sources having a spatial and/or polarity pattern that are formed within a contiguous magnet material." |

This term should be given its plain and ordinary meaning. The parties appear to agree that magnetic field sources that are formed within a single piece of magnetic material satisfy this claim limitation. The parties differ with respect to the remainder of Logitech's construction. Logitech's limitations ignore the difference between a "single contiguous piece," which is singular, and "one or more contiguous pieces," which can be plural. Moreover, Logitech's requirement that the piece of magnetic material also contain a polarity "pattern" has no support in the specification and is inconsistent with limitations in dependent claims.

"Contiguous" can encompass both a single piece of magnetic material and also multiple magnets that act mechanically like a single piece. But the patentee's use of the additional, limiting words "single" and "piece" in claim 3 narrow the scope. A construction that encompasses multiple pieces of magnetic material cannot satisfy the limitation of claim 3 because that would read the word "single" out of claim 3. It also erases the difference between the singular "piece" (in claim 3) and plural "pieces" (in claim 1). When the patentee wanted to claim a structure comprised of either a single piece of material or alternatively comprised of multiple pieces of material, the patentee did so by claiming "one *or more* contiguous piece*s*." *See* '672 Claim 1 (emphases added).

Logitech's construction renders claim 3 entirely superfluous. Claim 1 already requires a plurality of magnetic field sources in one or more contiguous pieces of magnetic material. Likewise, claim 1 already requires the claimed structure to have a polarity pattern—in particular one in which the autocorrelation function has one peak and a plurality of off-peak positions. A construction requiring that two of those field sources be contained in either one magnet or a series of magnets rigidly bonded to one another means claim 3 adds nothing.

Logitech's proposed construction also errs by requiring the single piece of magnetic material to have a polarity "pattern."[4] Requiring a sub-part of the magnetic structure of claim 1 to also have a polarity "pattern" has no basis in the intrinsic record and is, at best, confusing, because the two magnetic field sources of claim 3 can have the *same* polarity. This is evident in light of claims 4 and 5, both of which depend from claim 3. They respectively claim two alternate configurations for the two magnetic field sources of claim 3. In claim 4, the two field sources of claim 3 have the same polarity. In claim 5, the two field sources of claim 3 have different polarities. In practice, the structures of claims 4 and 5 could look like the following drawings:

      

Claim 4                                  Claim 5

Calling the claim 4 example above a "polarity pattern," even though both of the magnetic field sources have the same polarity, would be confusing to a jury. A single polarity is not typically referred to as a pattern.

Nothing in the intrinsic record supports the limitations proposed by Logitech. "[A] single contiguous piece of magnetic material" is singular, not plural. That is in contrast to claim 1, where the patentee claimed "one or more contiguous pieces," plural, to claim the

---

[4] Logitech's inclusion of a spatial pattern is non-sensical. The specification discusses some spatial patterns, such as the Golomb ruler of Fig. 7A. *See* '672 at 16:58-17:54. That structure uses a single polarity (*see* Fig. 7A and 16:64-66), and could not therefore satisfy the north-south-north polarity sequence required by claim 2. Claim 3 depends on claim 2. Spatial patterns have no application to these patent claims.

broader meaning of "contiguous." Logitech has offered no basis to impose a polarity pattern limitation on the two or more magnetic field sources recited by claim 3. The phrase at issue adds a straightforward limitation that requires no additional construction.

### E. "composite autocorrelation function" ('672 Patent, Claim 7)

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning | This claim limitation is indefinite. |

The '672 specification contains sufficient disclosure to enable a POSITA to understand a "composite autocorrelation function." There is no dispute that the intrinsic record adequately teaches a POSITA how to calculate an autocorrelation function for a magnet structure. *See*, *e.g.*, Figs. 3A-3H and Figs. 4A-4B; *see also* U.S. Patent 7,800,471 at Fig. 6 (depicting an "autocorrelation function) and at 9:64-10:19 ('471 is incorporated by reference, *see* '672 at 1:40-48).

The '672 patent discloses an embodiment that illustrates how to calculate the combined force function for multiple magnet structures. Figures 20A-C depict a panel that is attached to a frame. '672 at 31:53. When that panel and frame are aligned, each magnet in each magnet structure generates an attract force of one pound. *Id*. at 32:17-54. There are four corners on the panel, and each corner has with two magnet structures. *Id*. Each of the eight magnet structures on the panel utilize seven magnets arranged in a Barker-7 pattern (*i.e.*, N N N S S N S). *Id*. at 31:61-67. That is the same pattern depicted in Fig. 4A, for which a force function is depicted in Fig. 4B. When the panel is aligned with the frame, all of the magnet structures are aligned, and therefore the specification describes a total force of 56 lbs. *Id*. at 32:20-25. A POSITA would recognize that the total force when all of the magnet structures are aligned with their correlated pair is the composite peak force.

The '672 patent likewise explains how to calculate the composite off-peak values for that structure. *See* '672 at 32:29-37. Although the example in Figs. 20A-C are portrayed in the context of a panel and a frame, a POSITA would understand that the same calculation

14

applies when calculating an autocorrelation function—as taught by the '471 Patent at 9:64-10:19.

Logitech's focus on Fig. 7 is misplaced. Fig. 7A and 7B depict two magnet structures coded using a Golomb ruler code. All of the magnets in those magnet structures have the same polarity. '672 at 16:64-66. Just as Fig. 4B depicts the force generated at various relative positions by two magnet structures having the *polarity* patterns of Fig. 4A, Fig. 7B depicts the force function of two magnet structures having the *spatial* arrangement. Figure 7B does not disclose a composite structure and has nothing at all to do with composite autocorrelation functions.

The '672 specification provided examples of the process for calculating a composite autocorrelation function. Logitech has offered no basis to explain why a POSITA would not readily understand this straightforward concept. To the extent Logitech is arguing that this disclosure would be insufficient for a POSITA, Logitech failed to introduce any evidence to support that position.

## II.     CONCLUSION

For the foregoing reasons, CMR requests that the Court reject Logitech's proposed constructions and find that the disputed claim limitations should be given their plain and ordinary meaning.

Dated: April 4, 2022

**COLE SCHOTZ P.C.**

*/s/ Vishal Patel*
Vishal Patel

**NIXON PEABODY LLP**

*/s/ Erica J. Van Loon*
Erica J. Van Loon

*Attorneys for Plaintiff*
**Correlated Magnetics Research LLC**